## REYNOLDS *a.* THE PEOPLE.

*Supreme Court, First District; General Term, February,* 1864.

HOMICIDE.—DISPOSITION AND REPUTATION OF DECEASED.—REA-
SONABLE APPREHENSION OF PERIL.—INDICTMENT.—UNCERTAIN-
TY.—RETURN TO CERTIORARI.

*It seems,* that on a trial for murder, or manslaughter, evidence that deceased was
notorious for acts of violence dangerous to life and limb, and that from the re-
lations between the deceased and the prisoner such fact was known to the lat-
ter, is admissible.

But, where it did not appear that the character of the deceased was known to the
prisoner,—*Held,* that evidence of the brutal, quarrelsome, and bloodthirsty dis-
position of the deceased, and of his reputation for violence, was properly ex-
cluded.

Where a prisoner had been convicted of manslaughter by a jury, under an indict-
ment charging a wounding on the 6th February, 1862, and a death on the 14th
February, and that, " on the day and year aforesaid," the prisoner did kill, &c.,
—*Held,* that the prisoner could not take advantage of the uncertainty in the *in-*
dictment as to time.

A conviction will not be reversed on the ground that, in the return to the writ of
certiorari, it merely appears that the jury was regularly impannelled, without
the words " and sworn."

Certiorari to the New York General Sessions.

John Reynolds was convicted at the New York General Ses-
sions of manslaughter in the third degree, in slaying Patrick
Mathews. One of the justices of the Supreme Court certified,
under the statute, that there was sufficient cause for staying
proceedings, and the present certiorari was procured by the dis-
trict attorney for the purpose of reviewing the conviction. At
the trial, the prisoner's counsel introduced a witness and pro-
pounded the following question:

Q. Do you know what the character of Patrick Mathews was
in this community for the ten years during which you knew
. ' `. as a dangerous, violent, quarrelsome man?

'uestion was objected to and excluded, and an exception

The body of the indictment under which the conviction was had, was as follows :

"That John Reynolds, late of the Twenty-second ward of the city of New York, in the county of New York, aforesaid, on the sixth day of February, in the year of our Lord one thousand eight hundred and sixty-two, at the ward, city, and county aforesaid, with force and arms, in and upon one Patrick Mathews, in the peace of the people of the State then and there being, wilfully and feloniously did make an assault.

"And that he, the said John, with a certain knife, which he, the said John, in his right hand then and there had, and held the said knife in and upon the body of him the said Patrick, then and there wilfully and feloniously did beat, strike, stab, cut, and wound, thereby giving unto the said Patrick, then and there, with the knife aforesaid, in and upon the body of him, the said Patrick, one mortal wound, of the breadth of one inch, and of the depth of two inches, of which said mortal wound he, the said Patrick, at the ward, city, and county aforesaid, from the said sixth day of February, in the year aforesaid, until the fourteenth day of February, in the same year aforesaid, did languish, and languishing did live, and on which fourteenth day of February, in the year aforesaid, the said Patrick, at the ward, city, and county aforesaid, of the said mortal wound did die.

"And so the jurors aforesaid, upon their oath aforesaid, do say that he, the said John Reynolds, the said Patrick Mathews, in the manner and form, and by the means aforesaid, at the ward, city, and county aforesaid, on the day and the year aforesaid, wilfully and feloniously, did kill and slay, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York, and their dignity."

A portion of the return to the writ of certiorari was as follows :

"And the said defendant pleaded 'not guilty' to the indictment, and the trial of the said indictment was duly brought on at the said court, on the 12th day of October, 1862, before John T. Hoffman, Esquire, recorder of said city and county.

"After a jury had been regularly impannelled, the case was stated to the court and jury by the district attorney."

The foregoing facts are all that are deemed material, in view of the opinion of the court.

*Sidney H. Stuart* and *Charles S. Spencer*, for the prisoner.—
I. The defence should have been allowed to show that the deceased was a dangerous and violent man, so notorious for his habits of attacking others with pistols and knives, as to be a terror to the entire community in which he lived. Since the adoption of the present rule, established in the case of Selfridge (see *Whart. Hom.*, 417), and followed in the case of Shorter *a.* People (2 *N. Y.* (2 *Comst.*), 193), that one, without himself assailing, may kill an assailant if the circumstances of the occasion reasonably inspire the belief that his life or limb is in danger, although it may afterwards turn out that the appearances were false, and there was, in fact, no peril whatever ; a new and additional element of evidence—the character for violence of the assailing party, killed—has obtained. The rule now is, that if the slayer feels and believes, upon reasonable ground, that his life or person is in peril, he may destroy the source of that danger. Now, since a justification for such killing depends upon the fact of a belief of danger, and upon a reasonable ground for that belief, it is manifest enough that all such matters and circumstances as naturally tend to create an apprehension, and to show a reasonable ground for that apprehension, are legitimate matters and circumstances of evidence, and cannot be excluded from the jury, whose sole duty it is to find, first, whether the slayer was, in truth, in fear; and second, whether, in truth, there was reasonable ground for that fear. (State *a.* Tackett, 1 *Hawks.*, 210, 213 ; Queesenberry *a.* State, 3 *Stew. & Port.*, 308 ; Monroe *a.* State, 5 *Geo.*, 85 ; Keener *a.* State, 18 *Ib.*, 194, 220 ; Pritchett *a.* State, 22 *Ala.*, 39 ; Franklin *a.* State, 29 *Ib.*, 14 ; State *a.* Hicks, 27 *Mo.*, 588 ; Payne *a.* Commonwealth, 1 *Met.* (*Ky.*), 370 ; Rapp *a.* Commonwealth, 14 *B. More.*, 614.)

II. The indictment is vicious, for uncertainty in stating the time at which the affair is charged to have been committed. It is uncertain, from the face of the indictment, whether the prisoner " did kill and slay" the deceased on the sixth day or on the fourteenth day of February. The words " then and there," or " before-mentioned," or " aforesaid," or " before specified," or the like, when two or more dates have been

named, is fatally uncertain, unless the words "first aforesaid,"
or "last aforesaid," or the like, are also used. When time is
once stated with certainty, and not otherwise, it is sufficient
afterwards to refer to it by the words "then and there," "afore-
said," or similar words; but when several days are before
specified, it then becomes necessary to employ the words "first
aforesaid," "last aforesaid," or their equivalent, that it may be
known with certainty which of the before-mentioned days is
intended to be designated. In the absence of such words, in
such a case, the indictment will be bad for uncertainty.
(Stewart *a.* Com., 4 *Serg. & Rawle,* 194; State *a.* Cotton, 4
*Foster (N. H.),* 143; State *a.* Daily, 21 *Mo.,* 495; State *a.* Wil-
liams, 4 *Ind.,* 234; Sears *a.* State, 3 *M. & R.,* 45; 2 *Hale,* 178;
2 *Hawk.,* ch. 25, 878, and ch. 23, 888.) Time and place are
essential ingredients to a criminal charge, and defects in these
respects are not cured by verdict. (Fellner *a.* The People,
MS. case; Dedieu *a.* People, 22 *N. Y.,* 178.)

III. The verdict against the prisoner must be set aside, for
the reason that the jury who convicted him were not sworn as
the law requires—were not sworn at all.

*A. Oakey Hall,* for the people.—I. Evidence of the bad
character of Mathews was inadmissible. 1. Such kind of evi-
dence has been admitted when the *res gestæ* were involved in
mystery. Upon this evidence was erected a presumption that
a quarrelsome and bad man was likely to be the aggressor.
The evidence has been admitted from the necessity of the case,
no witnesses being able to give a narrative of the occurrence.
See cases cited in Pfomer *a.* People (4 *Park. Cr.,* 558, 567).
2. Such kind of evidence has been sometimes admitted when
its knowledge was brought home to prisoner, and he acted on
that knowledge. 3. But the weight of authority is against the
admission of this class of testimony. (1 *Whart. Cr. L.,* 5 ed.,
§ 641.)

II. The recorder correctly charged the jury, and the convic-
tion should be affirmed.

SUTHERLAND, P. J.—The only material question in this case
is as to the admissibility of the evidence offered by the prisoner
to show that the character of Mathews, the deceased, in the

community, was that he was a dangerous, violent, and quarrelsome man. The recorder excluded this evidence. In my opinion the evidence was properly excluded.

I cannot find any evidence in the case tending to show that the prisoner and Mathews were acquaintances, or that they had ever seen each other before the affray. There was no proof of any previous relation between them, from which it might be presumed that the prisoner knew Mathews' character good or bad. If Mathews' character was so notoriously that of a dangerous, violent, and quarrelsome man, that the prisoner had heard of it, I find nothing in the case authorizing the inference that the prisoner supposed, or thought, when he stabbed the deceased, that he was Patrick Mathews. At about the commencement of the affray some one called out "Pat:" there was no evidence that it was the prisoner; the inference from the evidence is, that it was one of the Mathews party.

Under these circumstances, how would proof of Mathews' notorious character for violence, &c., have tended to show that the prisoner believed himself in danger, when he saw Mathews approaching him? How Mathews' character could have influenced or had any thing to do with the motives of the prisoner's action, I cannot see.

In my opinion, under the circumstances of this case, the evidence was properly excluded.

Perhaps such evidence might be admissible, when from the previous relationship of the parties, or from other circumstances of the case, it would be reasonable to presume that the prisoner might have acted from a knowledge of the character of the deceased for violence, &c. (See *Wharton's Hom.*, 229; *do. Crim. L.*, vol. 1, § 641; State *a.* Field, 14 *Maine*, 428; State *a.* Tilly, 3 *Ind.*, 424.)

The proceedings in the Court of General Sessions should be affirmed, and that court should proceed and sentence the prisoner on his conviction.

CLERKE and BARNARD, JJ., concurred.